# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ADAM LOPICCOLO, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 11-0834 (ABJ) |
| AMERICAN UNIVERSITY, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Adam LoPiccolo brings this action alleging various claims against defendants American University ("AU"), its Board of Trustees, Director of Athletics Robert Acunto, and Coach Mark Cody related to the non-renewal of his wrestling scholarship. Defendants have moved for dismissal [Dkt. # 29 and # 31] under Fed. R. Civ. P. 12(b)(6).[1] Because plaintiff's claims are all barred by the statute of limitations, the Court will grant the motions to dismiss. The Court will also grant plaintiff's oral motion for leave to file a motion for leave to amend under Fed. R. Civ. P. 15 and 59(a), which must comport with LCvR 7(i).

## BACKGROUND

Plaintiff Adam LoPiccolo, a citizen of Pennsylvania, alleges that he was recruited to wrestle at American University, and that the team coach, defendant Cody, came to his home and offered him a full athletic scholarship, covering tuition, fees, room, board, and books. Am.

---

[1] Because the statute of limitations arguments advanced by Defendant Cody and the American University defendants, which include AU, the Board of Trustees, and Robert Acunto, are essentially the same, the Court considers them together even where only one of the briefs is cited.

Compl. ¶¶ 11, 14; *see also* Mot. to Dismiss Unedited Hearing Transcript ("Tr.") at 14 (Dec. 21, 2011). The gravamen of the complaint is that this oral promise of a "full athletic scholarship" was supposed to fund four years of college, but that the coach and AU did not live up to their commitments. *Id*. The complaint details numerous difficulties plaintiff experienced with defendant Cody once he joined the team, the most significant of which involve the coach's alleged insistence that plaintiff practice and wrestle competitively at times when he was ill or injured. *See, e.g.*, Am. Compl. ¶¶ 28, 29, 36. Those allegations do not bear on the particular issues addressed in this opinion, so they will not be fully recounted here.

In paragraph 21 of the amended complaint, plaintiff alleges that he was admitted to AU for the 2004 fall semester "and was awarded his full scholarship, which he signed in June of 2004. (See "American Univeristy Athletics Grant-in-Aid Agreement," an example of which is attached hereto as Exhibit 'A')." Am. Comp. ¶21. But Exhibit A is a grant-in-aid agreement for Fall 2005 – Spring 2006 only, and it specifies:

> An athletic grant-in-aid is awarded for either one (1) semester or one (1) academic year. The period covered by this Agreement is as stated. An athletics grant-in-aid may be renewed for each semester or academic year annually . . . . Renewal of this athletics grant-in-aid is not automatic.

On June 30, 2006, plaintiff entered into a scholarship agreement for the upcoming 2006–2007 school year, his third year on the team. Ex. B to AU Defs.' Mot. [Dkt. #29].[2] The agreement again provided for a full athletic scholarship. *Id*. Like the prior agreement, it stated: "[r]enewal of this athletic grant-in-aid is not automatic;" and "notification of renewal or non-

---

2   A document outside the complaint may be considered on a motion to dismiss under Rule 12(b)(6) if it is "referred to in the complaint" and is "integral to" the plaintiff's claim. *Kaempe v. Meyers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Because plaintiff's complaint plainly references his 2006–2007 scholarship agreement and how he learned that the agreement would not be renewed, the Court can properly consider the documents referencing those events for purposes of the motion to dismiss.

renewal shall be made in writing no later than July 1 prior to the academic year in which it is to be effective." *Id.* And the agreement expressly provided that "this document supersedes any previous verbal or non-verbal commitments that have been made to the Student-Athlete[.]" *Id.*

The complaint avers that in January 2007, as plaintiff was recovering from the flu and unable to practice, he received a phone call from defendant Cody informing him that "he was done at American University" and "was no longer on the wrestling team." Am. Compl. ¶ 52.[3] Plaintiff alleges that defendant Cody also told him that he was revoking his athletic scholarship immediately. *Id.* Plaintiff also received a letter from AU on January 29, 2007, informing him that his "participation as an American University men's wrestling student-athlete will discontinue effective immediately," but that his financial aid would be honored through the conclusion of the Spring 2007 semester. Ex. C to AU Defs.' Mot.[4] Plaintiff alleges that "during the next several months" he pursued appeals and was ultimately denied reinstatement of his scholarship. Am. Compl. ¶ 54.

Plaintiff filed this lawsuit on June 29, 2010, in the U.S. District Court for the Eastern District of Pennsylvania. That court transferred the case to this Court on March 31, 2011, pursuant to 28 U.S.C. § 1406(a) on the grounds that venue was improper in that district. [Dkt. # 22].

---

3   The complaint states that plaintiff was in Washington, D.C., at the time that he received the phone call from defendant Cody. Am. Compl. ¶¶ 52–53. But at the motion hearing held on December 21, 2011, plaintiff claimed he was in Pennsylvania at that time. Tr. at 47–48. This fact is not material to the court's choice-of-law analysis or to its resolution of plaintiff's claims.

4   The letter also stated that the Athletic Department would pay for him to take six credit hours during the Summer 2007 semester, and that if his Spring courses were completed successfully and he completed eighteen credit hours during the summer (six of which would be paid for by the university), that he could earn his undergraduate degree from AU at the conclusion of the Summer 2007 semester. Ex. C to AU Defs.' Mot.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider

only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

## ANALYSIS

**I.  District of Columbia Law Applies.**

The Court first must determine whether the substantive law of the District of Columbia or Pennsylvania applies to this case. To choose the applicable law when exercising diversity jurisdiction, the Court applies the choice of law rules of the forum. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Furthermore, defendants cite authority that directs the Court receiving a case transferred under §1406(a) to apply the choice of law principles of the transferee forum. AU Defs.' Supp. Mem. [Dkt. # 35] at 3. The District of Columbia applies a "governmental interest analysis." *Hartley v. Dombrowski*, 744 F. Supp. 2d 328, 336 (D.D.C. 2010), citing *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C. Cir. 1988).

Plaintiff urged the Court to choose to follow Pennsylvania's choice of law rules instead because while the case had been transferred from the Eastern District of Pennsylvania, it could have properly been brought in the Western District.[5] But at the hearing on plaintiff's motion, plaintiff's counsel conceded that she could cite no authority for the proposition that the Court should apply the choice of law principles of the transferor forum or of some other possible transferee forum under those circumstances. Tr. at 25.

In any event, plaintiff indicated that the choice-of-law test in Pennsylvania is

---

5  Counsel's arguments to this Court that the matter was transferred because venue was preferable in the District of Columbia and not because the case was improperly filed in the Eastern District of Pennsylvania are not consistent with the clear and succinct opinion issued by the court. *See* Dkt. # 22.

substantially the same as the one utilized by the District of Columbia.[6] Under the governmental interest test, a court must consider "the governmental policies underlying the applicable law and determine[] which jurisdiction's policy would be the most advanced by the application of its law to the facts of the case, taking into consideration (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered." *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 59 (D.D.C. 2010); *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 n.15 (3d Cir. 1991) ("Contacts considered vital in determining the state of most significant relationship include place of injury, place of conduct, domicile of the parties, and the place where the relationship between the parties is centered.").[7] Applying these factors, the Court concludes that the law would require the application of the substantive law of the District of Columbia under both the test applied in the District of Columbia and the standard utilized in Pennsylvania.

(1) The Place Where the Injury Occurred. The complaint alleges that plaintiff was informed by defendant Cody of his removal from the team and the loss of the scholarship when he returned to AU from Pennsylvania in January of 2007. Am. Compl. ¶¶ 51–52. But in connection with this motion, plaintiff maintains that he received the letters and phone calls about the non-renewal of his scholarship when he was at home in Pennsylvania, and that he suffered the "injury," *i.e.*, the emotional and economic harm, there. Pl.'s Sur-reply [Dkt. # 38] at 5 n.5;

---

6     The Pennsylvania choice-of-law test requires a court to determine which state has the greater interest in the application of its law. *See, e.g., LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996), citing *Cipolla v. Shaposka*, 267 A.2d 854 (1970).

7     The test has also been described as a blend of a "governmental interest analysis" with a "most significant relationship test." *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 566 A.2d 31, 40–41 (D.C. 1989).

Tr. at 47–48. Defendants contend that the alleged "injury" was the removal from the wrestling team in the District of Columbia, and that the decision not to renew plaintiff's scholarship occurred in Washington, D.C., as well. AU Defs.' Supp. Mem. at 4.

On this point, the Court agrees that it is the removal of the plaintiff from the AU team in January 2007 that animates the entire complaint. Even if the Court were to focus on the place where plaintiff experienced the alleged ensuing damages rather than where he was first injured, the Court notes that the complaint specifically alleges that much of the emotional fallout occurred on the AU campus. Plaintiff remained a student at the university, and he alleges that his identity as a wrestler was "ripped from him," Am. Compl. ¶ 93, that he became depressed, *id*. at ¶ 94, and that his grades dropped. *Id*. Giving the plaintiff the benefit of every doubt and inference, the factors, at best, point to both Pennsylvania and the District of Columbia as the location where the injury occurred, with the more substantial location being the District.

(2) The Place Where the Conduct Causing the Injury Occurred. No matter where plaintiff was when he heard the news, and no matter where he later suffered the consequences, the actionable events in this case were the coach's decision and the ratification of that decision by the Athletic Department and the university as an institution. Thus, the conduct causing the alleged injury central to the complaint took place in the District of Columbia. *See, e.g.*, Am. Compl. ¶¶ 52, 55; AU Defs.' Supp. Mem. at 4.

(3) The Domicile of the Parties. Plaintiff resides in Pennsylvania, Am. Compl. ¶ 1, but defendants live or work in the District of Columbia, Am. Compl. ¶¶ 3–6. In the case of defendant AU, the university is an educational institution located in the District of Columbia. Am. Compl. ¶ 2. Thus, this factor points to both Pennsylvania and the District of Columbia.

(4) The Place Where the Relationship of the Parties is Centered. The scholarship

7

agreement that plaintiff claims was breached was negotiated and signed in the District, and the contract was to be performed by all parties in D.C. *See* Am. Compl. ¶¶ 41, 43, 46; AU Defs.' Supp. Mem. at 2. Despite plaintiff's argument that plaintiff performed his end of the contract in various states by participating in NCAA wrestling tournaments all over the country, *see* Tr. at 26, the relationship of the parties is clearly centered in the District of Columbia where the academic institution to which tuition was being provided, and the wrestling team itself, were located.

In light of the Court's analysis of these factors, the Court will apply the substantive law of the District of Columbia.

## II. Plaintiff's Claims Are Barred by the Statute of Limitations.

### A. Plaintiff's Breach of Contract Claim

The statute of limitations in the District of Columbia for bringing a breach of contract claim is three years. D.C. Code § 12-301 (7).[8] Plaintiff and AU signed and entered into a scholarship agreement for the 2005–2006 academic year on June 30, 2006. Ex. B. to AU Defs.' Mot. Plaintiff received a letter on January 29, 2007, informing him that his scholarship would not be renewed. Ex. C to AU Defs.' Mot. Although the complaint does not expressly state when plaintiff learned from the coach that his scholarship would not be renewed, he generally alleges

---

8 Even if the Court applied the Pennsylvania statute of limitations as plaintiff urges it to do, the complaint would not survive. According to plaintiff, all of the counts except the breach of contract count would be barred by Pennsylvania's two-year statute of limitations. *See* 42 Pa. Const. Stat. § 5521; Tr. at 43. Pennsylvania has a four-year statute of limitations for breach of contract claims, *see* 42 Pa. Const. Stat. § 5525, but if a claim accrued outside the state of Pennsylvania, which for a breach of contract claim is a determination of where the breach occurred, then a different statute provides that the statute of limitations is determined by the law of the state where the claim accrued. 42 Pa. Const. Stat. § 5521. Here, the breach occurred in the District of Columbia, so under the statute, the Court must apply the three-year statute of limitations under D.C. law.

Plaintiff could advance no credible theory as to how the Court could find that the breach, as opposed to some aspect of plaintiff's injury, occurred in Pennsylvania. Tr. at 43–45. Here, the alleged breach was committed by American University in the District of Columbia.

that he received the call in January 2007, which is consistent with the date of letter that defendants sent to him. *See* Am. Compl. ¶¶ 49–53. According to plaintiff, "[d]uring the next several months," he filed several unsuccessful appeals challenging the decision not to renew his scholarship. Am. Compl. ¶ 54.

Setting aside defendants' arguments about the defects of plaintiff's claims on the merits,[9] the preliminary question to be resolved is whether those claims are time barred, and this turns on the question of when the statute of limitations started to run. Under the District of Columbia's discovery rule, the statute of limitations begins to run when a party becomes aware that he has suffered harm which has been caused by another. *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996). Other courts in this district, as well as District of Columbia courts, have held that a breach of contract claim accrues when the plaintiff is notified of his or her termination or non-renewal. *See Allison v. Howard Univ.*, 209 F. Supp. 2d 55, 60 (D.D.C. 2002); *Harris v. Ladner*, 828 A.2d 203, 206 (D.C. 2003); *Stephenson v. American Dental Ass'n*, 789 A.2d 1248, 1251–52 (D.C. 2002).

Even in cases where a plaintiff files an appeal challenging the decision, the statute of limitations begins to run at the time of the alleged breach and not after the conclusion of the appeals. *Allison*, 209 F. Supp. 2d at 60. In *Allison*, a law student at Howard University brought

---

9 On the merits, defendants argue that the breach of contract claim fails because the contract expressly states that it is not automatically renewable, and that no breach occurred because defendant AU continued to pay his tuition for the completion of the Spring semester and part of the Summer term. AU Defs.' Mem. at 8. Defendants contend that there is no separate cause of action under District of Columbia law for breach of duty of good faith and that such a claim constitutes a breach of contract, *id.* at 10, and that the fraud in the inducement claim is barred by the parol evidence rule, *id.* at 11–13. Defendants argue that plaintiff has failed to allege extreme and outrageous conduct that would support his claim for intentional infliction of emotional distress. *Id.* at 13–14. Plaintiff appears to have conceded his claim for negligent infliction of emotional distress. Pl.'s Opp. at 25–29 (failing to address defendants' arguments that the claim should be dismissed).

a breach of contract claim related to his expulsion. After learning of his expulsion on May 22, 1996, the student filed multiple appeals and made numerous requests for readmission but did not file his lawsuit until June 17, 1999. *Id.* The Court held that the statute of limitations began to run at the time the expulsion decision was "made and communicated" to the student and that the "pendency of a grievance, or some other method of collateral review, does not toll the running of the limitations period." *Id.*, citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (holding that the statute of limitations for an employment discrimination lawsuit by a college professor who did not receive tenure began when the college made the tenure decision and communicated that decision to the plaintiff).

Plaintiff argues that defendants are relying on employment discrimination cases and not on breach of contract cases. But defendants have cited breach of contract cases, including one referenced at oral argument, *Medhin v. Hailu*, 26 A.3d 307 (D.C. 2011). In *Medhin*, the D.C. Court of Appeals determined that the District's statute of limitations barred a breach of contract action between a real estate broker and vendor regarding a dispute over a commission fee. *Id.* at 308. The court found that "Medhin was well aware that he suffered an injury when he was told 'no commission would be paid.' Thus, any claim by Medhin to recover that commission brought more than three years after that notice would be untimely." *Id.* at 311.

If the clock begins to run when a party has been made aware that the other is refusing to perform, it is clear from the face of the complaint that plaintiff knew that defendants Cody and AU would no longer perform the contract in January 2007. *See, e.g.,* Am. Compl. ¶ 54 (alleging that "during the next several months" after his scholarship was revoked, plaintiff pursued appeals and was ultimately denied "reinstatement"); *id.* ¶ 55 ("Defendant, Robert Acunto was the Co-Interim Director of Athletics at the time Mr. LoPiccolo's athletic scholarship was revoked"); *id.*

¶ 60 ("Mr. Lopiccolo was removed from Defendants' wrestling team in the middle of the season without merit . . . As a result of Defendants' actions, Mr. LoPiccolo was not permitted to continue or complete the NCAA Division I wrestling season . . . "); *id.* ¶ 63 ("Defendants['] actions in removing Mr. LoPiccolo from their inter-collegiate wrestling team during the season and without cause were in breach of the 2006–2007 full athletic scholarship agreed upon between Mr. LoPiccolo and Defendants"); *id.* ¶ 64 ("As a result of this breach by Defendants, Mr. LoPiccolo was deprived of additional renewals of the full athletic scholarship he was originally promised by Defendants and for which he had done nothing to warrant non-renewal.") Indeed, the complaint expressly alleges that the appeal taken by plaintiff was based on his understanding that a decision had been made that his scholarship would not be renewed. *Id.* ¶ 90 (alleging that "[o]nce his athletic scholarship was revoked, Mr. LoPiccolo appealed the decision to the appropriate persons throughout the university, including in his appeal the assertions of Defendant Cody's behavior towards him, but to no avail. All appeals were denied and the university took no action against Defendant Cody.") Moreover, the letter dated January 29, 2007, put plaintiff on notice that he had both been removed from the team and that his scholarship agreement would not be renewed.[10]

Nowhere in the complaint does plaintiff allege that the actionable breach by AU was some failure to provide notice by July 1 that the financial aid would not be renewed; nor does the complaint allege that the denial of the appeal in September 2007 constituted the actionable breach. And even if it did, according to the law in the District of Columbia, the cause of action would have accrued in January in any event.

---

10   Even if the Court could only consider the letter in a summary judgment context, plaintiff conceded at the motions hearing that he received the letter and that he does not contest its authenticity. Tr. at 13.

Thus, the statute of limitations for all of the claims began to run at the end of January 2007 when plaintiff was informed by both defendant Cody and defendant American University that he could no longer wrestle and that his scholarship would not be renewed. Under the three-year statute of limitations, plaintiff had until January 29, 2010, to file his complaint. Plaintiff did not file his complaint until June 29, 2010 – six months after the deadline. Therefore, Count I for breach of contract is time-barred.[11]

**B. Plaintiff's Remaining Claims Are Time-Barred.**

A three-year statute of limitations also governs plaintiff's remaining claims for breach of the duty of good faith and fair dealing (Count II), fraud in the inducement (Count III), intentional infliction of emotional distress (Count IV), and negligent infliction of emotional distress (Count V). D.C. law provides that when a statute of limitations period is not expressly enumerated for a particular claim, the applicable statute of limitations is three years. D.C. Code § 12-301 (8) ("Limitation of time for bringing action . . . (8) for which limitation is not otherwise specifically prescribed – 3 years"). Plaintiff learned that his scholarship would be not be renewed on January 29, 2007. As with the breach of contract claim, under the three-year statute of limitations, plaintiff had until January 29, 2010 to file his complaint.[12] Because he did not bring those claims until June 29, 2010, these claims are also time-barred.

---

11      This conclusion is true whether the contract allegedly breached is the one specified in the complaint, that is, the 2006–2007 written scholarship agreement that expressly states that it supersedes any prior contracts, that its renewal is not guaranteed, and under which AU continued to provide plaintiff with a free education through the end of the academic year notwithstanding his removal from the team – or whether the contract breached, as was suggested at oral argument, was an alleged four-year contract extended by defendant Cody to plaintiff in his living room in 2004, when he was being recruited to AU, *see* Tr. at 14.

12      The Court does not need to reach defendants' arguments for dismissing plaintiff's claims on their merits because it finds that they are time barred by the applicable statute of limitations.

12

**III.     Plaintiff's Oral Motion for Leave To File a Motion for Leave To Amend Is Granted.**

At oral argument, plaintiff asked for an opportunity to move to file an amended complaint – for the second time – if the Court ultimately determined that the motions to dismiss should be granted. Tr. at 30. A motion for leave to amend may be of dubious utility given the fact that plaintiff was on actual notice of both his removal from the team and the revocation of his scholarship as of January 29, 2007, at the latest.[13] And, since all of the counts in the complaint are to be dismissed pursuant to this opinion, the plaintiff's motion must satisfy both Fed. R. Civ. P. 15 and 59(a).

But, the Court will grant plaintiff leave to file a motion for leave to amend under Fed. R. Civ. P. 15 and 59(a) that comports with LCvR 7(i) on or before February 2, 2012. The Court takes no position on the motion, but in an exercise of its discretion, it will defer its determination of whether the dismissal of plaintiff's claims in accordance with this opinion is with or without prejudice until after it has had an opportunity to review the motion, the opposition, and the proposed amended complaint, if one is filed.

---

13   At the hearing, plaintiff claimed that the notice did not comply with all of the technical requirements of the contract or with NCAA regulations, and that a cause of action for this alleged breach of the notice provision in the contract did not accrue until July 1. But it is difficult to determine what harm such a breach would have caused. Counsel posited at the hearing that the damage plaintiff suffered was his inability to continue his education at AU. Tr. at 37–38. But the non-renewal of his scholarship simply meant that plaintiff could no longer attend AU for free, not that he could no longer attend the university at all, and the loss of the scholarship occurred as a result of the January action, not the allegedly defective notice. Moreover, the fact that plaintiff filed timely appeals before July 1, as he alleges in his complaint, would suggest that he was not prejudiced by any technical deficiencies in the notice.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss [Dkt. # 29 and # 31] will be granted. Plaintiff's oral motion for leave to file a motion for leave to amend will also be granted. Plaintiff must file any such motion by February 2, 2012. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: January 5, 2012